UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TMJ GROUP, LLC | * | CIVIL ACTION NO. 17-4677 |
| --- | --- | --- |
| | * | |
| | * | SECTION: "G"(1) |
| VERSUS | * | |
| | * | JUDGE |
| | * | NANNETTE JOLIVETTE BROWN |
| IMCMV HOLDINGS, ET AL. | * | |
| | * | MAGISTRATE JUDGE |
| | | JANIS VAN MEERVELD |
| ************************************* | * | |

## ORDER AND REASONS

Before the Court are the Motion to Compel filed by defendants IMCMV Holdings, Inc. and IMCMV management, LLC (together "IMC") (Rec. Doc. 49); IMC's Amended Motion to Compel and Motion for Leave to Take Depositions Past Discovery Deadline (Rec. Doc. 84); and the Motion to Compel filed by plaintiffs TMJ Group, LLC, and TMJ Developer, LLC (together "TMJ") (Rec. Doc. 57). The Court held oral argument on April 4, 2018, and took the motions under submission. For the following reasons, IMC's Motions to Compel (Rec. Docs. 49 and 84) are GRANTED in part, with issues regarding the redacted documents taken under submission. TMJ's Motion to Compel (Rec. Doc. 57) is GRANTED in part and DENIED in part.

## Background

Plaintiff TMJ Group, LLC, ("TMJ Group") filed this lawsuit on May 3, 2017, alleging that it had been fraudulently induced to invest in two Margaritaville restaurants by defendants IMCMV Holdings, Inc. ("IMC Holdings"), IMCMV Management, LLC ("IMC Management," and with IMC Holdings, "IMC"). One of the restaurants is located in the Mall of America ("MOA") and the other in New Orleans ("NOLA"). On March 7, 2018, TMJ was granted leave to amend its complaint to add facts regarding the purported fraudulent misrepresentations, to assert new causes

1

of action arising from the same operative facts, to demand a jury, and to add TMJ Developer, LLC ("TMJ Developer" and with TMJ Group, "TMJ") as a plaintiff. Trial is set to begin May 14, 2018. The deadline to complete discovery is March 14, 2018.

Of interest to the present discovery motions is TMJ's allegation that it sought and obtained financing for the investment at issue in this lawsuit from First NBC Bank ("FNBC") and that IMC altered financial figures in the pro forma financial statements it provided to TMB and FNBC so that FNBC would approve the financing after initially rejecting it.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). Of note, with the 2015 amendment to Rule 26, it is now clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. In assessing proportionality of discovery, the following should be considered: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee

comments to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id.

   2. *IMC's Motion to Compel Unredacted FNBC Communications and Depositions*

The first item at issue in IMC's Motion and Amended Motion to Compel is the redacted communications between FNBC and TMJ. The Court has ordered the documents produced for *in camera* review. Some issues have arisen regarding the scope of documents at issue, accordingly, this portion of the Motions remains under submission.

IMC also moves to compel several depositions, although the discovery deadline of March 14, 2018, has now passed. Below, the undersigned addresses why, and pursuant to what limitations, the requested depositions may proceed if the discovery deadline is extended. To proceed with depositions at this time, the parties must show good cause for a modification of the existing scheduling order so that the discovery deadline may be extended. The undersigned cannot provide this relief. The parties must obtain a discovery extension by motion set before the District Judge. In requesting relief from the discovery deadline, the parties should make clear the amount of time they need to complete additional discovery, including identification of agreed upon deposition dates, if possible. The Court notes that the pending Motion to Compel Deposition of Brad Axelrod (Rec. Doc. 80), which remains under submission at this time, is subject to the same requirement that even if the undersigned determines that the deposition is appropriate, the parties must obtain an extension of the discovery deadline before proceeding with the deposition.

With regard to the request to depose Motwani a second time, IMC submits that much of TMJ's document production occurred right before or on the discovery deadline, with 2,625 pages of documents produced on March 5, 2018, and 694 pages of documents on March 14, 2018. As a

result, IMC argues, it did not have all relevant documents available to use in TMJ's depositions. It appears that some FNBC documents were discussed at the time of Motwani's deposition, and IMC left the deposition open because of its concern that not all FNBC documents had been produced despite TMJ's insistence that they had been. The FNBC loan application and related bank documents were produced by TMJ about two weeks later, and nine days after that, TMJ produced more FNBC communications. At oral argument, IMC explained that these communications include key communications affecting their understanding of the case, notably, a communication sharing the Fourth Pro Forma with FNBC prior to FNBC's approval of the loan. TMJ does not oppose the second deposition of Motwani, although it insists the deposition should be limited to the additional FNBC documents.

In reply, IMC argues that the scope of the second deposition should also cover the documents produced by TMJ "the night before" Motwani's first deposition because it did not have sufficient time to review those documents prior to the deposition, as well as TMJ's relationship and communications with its counsel Brad Axelrod because, IMC argues, it had an incomplete picture of the relationship, agreements, and documents, exchanged between FNBC and TMJ at the time of the first deposition. It was clarified at oral argument that the documents produced "the night before" Motwani's deposition were actually produced the night before a string of three days of depositions, with Motwani's deposition proceeding on the third day.

The Court finds that, subject to the requirement that an extension of the discovery deadline be obtained from the District Judge, a second deposition of Motwani is appropriate here in light of the documents produced after his deposition. The scope of the deposition shall be limited to the documents produced **after** Motwani's deposition, and any other documents or issues required to give context to, provide clarification of, to contrast with, or explain discrepancies with the

documents produced after Motwani's deposition. This could, therefore, permit reference to earlier produced documents.

IMC also seeks to compel the deposition of one or more former FNBC representatives. IMC points out that the FNBC representatives are listed on both parties' witness lists. However, because IMC did not have all of the FNBC documents prior to the discovery deadline, it says, it initially decided not to depose FNBC. The late production of documents caused it to revisit this decision. TMJ opposes the deposition of any FNBC representatives because the request is untimely. TMJ argues that because it identified FNBC personnel in its initial disclosures and earlier document production included some FNBC documents, IMC has long had sufficient information to determine whether to take such depositions. TMJ insists it will be prejudiced if the depositions are allowed at this late date given that trial is imminent.

There is no real dispute that a deposition of an FNBC representative is within the scope of discovery. At oral argument, IMC's counsel explained that the communications related to the Fourth Pro Forma (received near the end of the discovery deadline) are of particular interest. Accordingly, subject to the District Judge providing an extension of the discovery deadline, IMC may proceed with a deposition of one FNBC representative and, if necessary due to that representative's inability to provide complete answers, a second FNBC representative.

3. *TMJ's Motion to Compel*

As noted in this Court's minute entry following the April 4, 2018, oral argument, several of the issues raised in TMJ's Motion to Compel are now moot. The remaining issues are discussed below.

TMJ's Motion to Compel seeks certain financial documents, including tax returns and schedules, financial statements, and accounting ledgers for all of IMC's other Margaritaville

5

restaurants (that is, other than the restaurants at issue in this litigation). TMJ insists the documents are relevant because in convincing TMJ to invest in the two restaurants at issue here, IMC's financial forecasts were based on comparable IMC owned restaurants. TMJ adds that IMC's expert relied on the financials of other Margaritaville restaurants. IMC responds that these financials are irrelevant and disproportional. The other restaurants are not a part of this litigation. And, IMC says, to the extent TMJ seeks the financial data of restaurants considered as part of IMC's revenue projections for the MOA project, that data is contained in the native Excel business cases that IMC has already produced. At oral argument IMC explained the data in these Excel files regarding the other restaurants (key performance indicators extracted from the financials) is the data considered by their expert, not the separate financial documents of those restaurants. The Court agrees that the financial documents for the other Margaritaville restaurants are not relevant or proportional to the needs of this case. TMJ already has the key performance indicators extracted from those financials for the purpose of creating the business cases and pro formas for the proposed investment. The relevance of the financial statements of the other restaurants is too tangential to justify the burden of production. As to these documents, the Motion to Compel is denied.

As to TMJ's demand that certain financial documents be produced in Excel rather than PDF format, the Court finds the burden to IMC to convert the documents into Excel is too great to justify IMC undertaking that endeavor here. However, the Court has ordered the parties to work together to provide the documents in their native format. If this is unsuccessful, the parties may contact the chambers of the undersigned to set up a telephone conference to discuss.

TMJ's Motion to Compel also demands responses to its interrogatories regarding the reasoning behind changes to pro forma financial statements made while the investments at issue here were being negotiated. As noted above, TMJ alleges that IMC altered the pro forma financial

statements to make the investment appear more attractive to TMJ and FNBC. IMC argues that its identical responses to three requests are not "boilerplate," but that they meaningfully explain how changes to pro formas are made by stating that "in preparing financial projections, [IMC] takes into account planned seating capacity, estimated revenue per seat per year, the financial results of other Margaritaville-themed restaurants, the location, market competitors, and the labor market." The Court finds that while these responses explain how financial projections are created, these responses fail to answer the interrogatory which asks for an explanation for specific revisions made at specific times. Nonetheless, at oral argument, counsel for IMC explained that through the depositions of six IMC representatives, TMJ has been able to explore these changes. IMC insists that an answer cannot be summarized succinctly into a written response. In this case, the Court finds that TMJ's ability to depose IMC representatives regarding the changes to the pro formas is sufficient, and IMC will not be required to provide supplemental responses to the interrogatories.

TMJ's Motion to Compel also seeks text messages between IMC and TMJ representatives. TMJ points out that TMJ frequently corresponded with IMC via text message. According to TMJ, IMC has not collected or produced any text messages. IMC responds that the issue is that their former chief development officer Mr. Abal left the company and IMC has not been able to access his iPhone. IMC has requested passcodes from Mr. Abal, but those did not work. Another individual, Jonathan Perez, who is no longer working for IMC, had custody of the phone in the interim and IMC says that Perez reset the phone and added a new passcode. IMC has contacted Apple and its carrier, AT&T, who both indicated that the passcode cannot be bypassed without resetting the phone. It appears, though it does not say so explicitly, that IMC is arguing that because the phone was reset, even if the phone could be accessed, it would no longer have the text

7

messages. At oral argument, it was determined that there is nothing further that can be done to attempt to retrieve the Abal text messages.

TMJ also argues that IMC must search the text messages of the following IMC representatives: Renato Barbon, David Crabtree, Jose Agote, Steve Feldman, Cristina Moreno, Kris Parmer, and Mark Slusz. TMJ explained at oral argument that these individuals were involved with the transaction at issue here and may have received text messages from Mr. Abal regarding TMJ. IMC has searched Crabtree's text messages, but not the others. At oral argument, IMC suggested that searching through its employees' text messages would be unduly burdensome. The Court disagrees. To the extent any text messages sent to Mr. Abal or received from Mr. Abal by the listed individuals concern TMJ and the transaction at issue here, they are relevant and they are not so voluminous or difficult to obtain that they are disproportionate to the needs of the case. Accordingly, to the extent Barbon, Crabtree, Agote, Feldman, Moreno, Parmer, and/or Slusz, are still employed by IMC, IMC shall search their text messages for any messages from Mario Abal related to TMJ and the transaction at issue here. The text messages shall be produced within seven days.

Finally, TMJ demands that IMC describe the process and procedure it used to collect documents, including custodians, search terms, and sources of data. As IMC points out, that procedure was clearly described in its letter dated January 31, 2018, which listed the sender/recipient names along with the search terms that were used. To the extent the discovery deadline is continued and an issue arises regarding whether the scope of IMC's search was sufficient, TMJ may raise that issue with the Court at a future time.

Conclusion

For the foregoing reasons, IMC's Motion to Compel (Rec. Doc. 49) and IMC's Amended Motion to Compel and Motion for Leave to Take Depositions Past Discovery Deadline (Rec. Doc. 84) is GRANTED in part, with the remaining issues taken under submission. The deposition of Motwani and one or more FNBC representatives may proceed, subject to the scope and restrictions provided herein, including the requirement that the parties obtain an extension of the discovery deadline before any depositions are held. TMJ's Motion to Compel (Rec. Doc. 57) is GRANTED in part and DENIED in part. TMJ shall produce responsive text messages (on the terms described herein), within seven days.

New Orleans, Louisiana, this 6th day of April, 2018.

                                                Janis van Meerveld
                                      United States Magistrate Judge