| | |
|---|---|
| **TMJ GROUP LLC, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-4677** |
| **IMCMV HOLDINGS INC., et al.** | **SECTION: "G" (1)** |

## ORDER

Pending before this Court is Defendants IMCMV Holdings, Inc. ("IMC Holdings") and IMCMV Management, LLC's ("IMC Management") (collectively, "IMC Defendants") motion for summary judgment.[1] In this action, TMJ Group, LLC ("TMJ Group") and TMJ Developer, LLC ("TMC Developer") (collectively, "TMJ Plaintiffs") allege that IMC Defendants made misrepresentations upon which TMJ Plaintiffs relied for the purpose of investing in two Margaritaville restaurants located in Minneapolis, Minnesota, and New Orleans, Louisiana, giving rise to TMJ Plaintiffs' claims for rescission pursuant to the Securities Act of 1933; securities fraud in violation of the Securities Exchange Act of 1934; intentional misrepresentation or fraudulent inducement; negligence; breach of contract; breach of fiduciary duty; negligent misrepresentation; rescission pursuant to Louisiana Blue Sky laws; violation of the Louisiana Unfair Trade Practices Act ("LUTPA"); and anticipatory breach of contract.[2] Considering the motion, the memoranda in support and opposition, the record, oral argument, and the applicable law, the Court will grant IMC Defendants' motion to the extent it seeks summary judgment on TMJ Plaintiff's claims for

---

[1] Rec. Doc. 65.

[2] Rec. Doc. 46

rescission pursuant to the Securities Act of 1933 and TMJ Plaintiff's LUTPA claims. The Court will deny the motion in all other respects.

## I. Background

### A.    *Factual Background*

The following facts are alleged in TMJ Plaintiffs' statement of undisputed facts and are generally undisputed by IMC Defendants.[3] On or about June 30, 2015, TMJ Group entered into a Limited Liability Company Operating Agreement (the "NOLA Business Operating Agreement") with IMC Holdings, under which IMCMV New Orleans, LLC ("IMC NOLA") was formed.[4] IMC NOLA's sole members are TMJ Group and IMC Holdings, both of whom hold Class A and Class B units in IMC NOLA.[5] IMC NOLA is a manager-managed LLC, and IMC Management is its manager.[6] IMC Management is a wholly-owned subsidiary of IMC Holdings.[7]

IMC Management and IMC NOLA also executed a Management Agreement (the "NOLA Business Management Agreement"), which recites that IMC Holdings and TMJ Group formed IMC NOLA, a Manager-managed LLC, for the purpose of "developing, owning and operating a Margaritaville-themed restaurant and bar in the French Quarter of New Orleans" (the "New Orleans Restaurant").[8] The NOLA Business Management Agreement specifies various duties

---

[3] Rec. Doc. 60-18.

[4] *Id*. at 1, 3.

[5] *Id*. at 1, 3. Class A units represent capital investment of members, are entitled to a preferred financial return, but do not have voting rights. *Id*. at 3. Class B units are considered "membership interests" and have both financial and voting rights. *Id*.

[6] *Id*.

[7] *Id*.

[8] *Id*. at 2.

required of IMC Management, as acting Manager, regarding the management and operation of the business, including with respect to financial matters.[9]

On July 28, 2015, "Mr. Abal," on behalf of IMC Holdings, sent TMJ Group a pro forma (the "First Pro Forma") for a restaurant at the Mall of America showing earnings before interest, taxes, depreciation, and amortization ("EBITDA") in the first twelve months at $448,569.[10]

On or about August 18, 2015, TMJ Group entered into a Limited Liability Company Operating Agreement (the "MOA Business Operating Agreement") with IMC Holdings under which IMCMV MOA, LLC ("IMC MOA") was formed.[11] IMC MOA's sole members are TMJ Group and IMC Holdings, both of whom hold Class A and Class B Units in IMC MOA.[12] IMC MOA is a manager-managed LLC, and IMC Management is its manager.[13] IMC Management is a wholly-owned subsidiary of IMC Holdings.[14]

The MOA Business Operating Agreement provides that IMC Holdings shall be the initial Manager of IMC MOA with the complete power and authority to manage and operate IMC MOA and make all decisions affecting its business and affairs.[15] The MOA Business Operating

---

[9] *Id*. at 2–3.

[10] *Id*. at 3; Rec. Doc. 60-7. IMC disputes this fact to the extent that the referenced document is a not titled a "pro forma," and it indicates projected EBITDA of $449,000. Rec. Doc. 79-1.

[11] Rec. Doc. 60-18 at 3, 6.

[12] *Id*. at 4, 6. Class A units represent capital investment of members, are entitled to a preferred financial return, but do not have voting rights. *Id*. at 6. Class B units are considered "membership interests" and have both financial and voting rights. *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id*. at 3.

Agreement further specifies conditions by which the Manager breaches its obligations and actions the Manager is prohibited to take without approval of the Members.[16]

IMC Management and IMC MOA also executed a Management Agreement (the "MOA Business Management Agreement"), which recites that IMC Holdings and TMJ formed IMC MOA, a manager-managed LLC, for the purpose of "developing, owning and operating a Margaritaville-themed restaurant and bar" located in the Mall of America in Minneapolis, Minnesota (the "Minneapolis Restaurant").[17] The MOA Business Management Agreement specifies various duties required of IMC Management, as acting Manager, regarding the management and operation of the business, including with respect to financial matters.[18]

TMJ invested $3,191,223.50 in IMC MOA Class A units.[19] Those units do not have voting rights, do not participate in the eight decisions that managers must bring to members, and do not have any power or right to remove the manager.[20]

In November 2015, IMC Holdings and TMJ Group entered into an "Amended and Restated" Limited Liability Company Operating Agreement (the "Revised MOA Business Operating Agreement"), which lists IMC Holdings and TMJ Group as the Company's sole "Members" and specifies comparable conditions and obligations of the Manager as the original MOA Business Operating Agreement.[21]

---

[16] *Id*. at 4.

[17] *Id*. at 4–5.

[18] *Id*. at 5–6.

[19] *Id.* at 6.

[20] *Id.*

[21] *Id*. at 7.

IMC Management and IMC MOA also executed a Restated Management Agreement (the "Revised MOA Business Management Agreement").[22] Like the original MOA Business Management Agreement, the Revised MOA Business Management Agreement recites that IMC Holdings and TMJ Group formed IMC MOA, a manager-managed LLC, for the purpose of "developing, owning and operating a Margaritaville-themed restaurant and bar" located in the Mall of America in Minneapolis, Minnesota.[23] The Revised MOA Business Management Agreement further specifies various duties required of IMC Management, as acting Manager, regarding the management and operation of the business, including with respect to financial matters.[24]

## B.    *Procedural Background*

On May 3, 2017, TMJ Group filed a complaint against IMC Defendants for rescission of the agreements and damages in the amount of $3,418,388.42 related to the Minneapolis Restaurant and $553,299.05 related to the New Orleans restaurant, asserting the following claims: (1) violation of Regulation D and Section 5 of the Securities Act of 1933; (2) intentional misrepresentation, and, or, fraudulent inducement; (3) breach of contract; (4) breach of fiduciary duty; (5) negligent misrepresentation; (6) violation of Louisiana "Blue Sky" laws; and (7) violation of LUTPA.[25]

On March 7, 2018, with leave of Court, TMJ Group and TMJ Developer filed an amended complaint against IMC Defendants for rescission of the agreements and damages in the amount of

---

[22]  *Id*. at 8.

[23]  *Id*.

[24]  *Id*. at 8–9.

[25]  Rec. Doc. 1.

$3,500,000 related to the Minneapolis Restaurant and $3,700,000 related to the New Orleans restaurant, asserting the following claims: (1) rescission pursuant to Section 12(a)(1) of the Securities Act of 1933; (2) securities fraud for violations of the Securities Exchange Act of 1934; (3) intentional misrepresentation or fraudulent inducement; (4) negligence; (5) breach of contract; (6) breach of fiduciary duty; (7) negligent misrepresentation; (8) rescission pursuant to Louisiana Blue Sky laws; (9) violation of LUTPA; and (10) anticipatory breach of contract.[26]

On March 14, 2018, IMC Defendants filed the instant motion for summary judgment.[27] On March 20, 2018, TMJ Plaintiffs filed an opposition.[28] On March 27, 2018, with leave of Court, IMC Defendants filed a reply brief in further support of the motion for summary judgment.[29] On April 4, 2018, with leave of Court, TMJ Plaintiffs filed a supplement to the opposition.[30] On April 4, 2018, the Court heard oral argument on the motion.[31]

## II. Parties' Arguments

### A. IMC Defendants' Arguments in Support of the Motion for Summary Judgment

In the motion for summary judgment, IMC Defendants first argue that undisputed facts show that TMJ Plaintiffs' claims for rescission under the Securities Act of 1933 are time-barred because they must have been brought within one year of the alleged sale of the security and were

---

[26] Rec. Doc. 1.

[27] Rec. Doc. 65.

[28] Rec. Doc. 86.

[29] Rec. Doc. 124.

[30] Rec. Doc. 130.

[31] Rec. Doc. 128.

not; and no tolling or "discovery" rule applies to this period.[32] IMC Defendants point to the execution dates of the operating agreements and the deposition testimony of TMJ member Aaron Motwani to establish that TMJ Plaintiffs acquired the LLC membership interests more than one year before this suit was filed.[33] Accordingly, IMC Defendants argue, no genuine fact dispute exists as to whether TMJ Plaintiffs' LLC membership interests were acquired more than a year before this action was filed, and IMC Defendants are entitled to summary judgment on the rescission claim brought under the Security Act of 1933.[34]

IMC Defendants next argue that undisputed facts establish that TMJ Plaintiffs acquired the LLC membership interests via a negotiated, one-on-one transaction in which TMJ Plaintiffs were represented by counsel.[35] Therefore, pursuant to the Supreme Court's decision in *Marine Bank v. Weaver*, IMC Defendants argue the LLC membership interests are not securities under federal law; and because Louisiana state securities law mirrors federal law, the LLC Membership interests are not securities under state law either.[36]

In addition, IMC Defendants argue that undisputed facts show that TMJ Plaintiffs could exercise significant control over the restaurants, precluding "security" status, insofar as TMJ Plaintiffs were not passive investors.[37] Accordingly, IMC Defendants argue, there is no genuine

---

[32] Rec. Doc. 65-1 at 5.

[33] *Id*. at 5–6.

[34] *Id*. at 6.

[35] *Id*. at 6–8.

[36] *Id*. (citing *Marine Bank v. Weaver*, 455 U.S. 551 (1982)).

[37] *Id*. at 8–11 (citing *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (quoting *SEC v. W.J. Howey Co*., 328 U.S. 293 (1946)); *Avenue Cap. Mgmt. II, L.P. v. Schaden*, 843 F.3d 875, 882 (10th Cir. 2016)).

fact dispute that the LLC membership interests acquired by TMJ Plaintiffs fall outside the definition of a "security."[38] Therefore, IMC Defendants argue, they are entitled to summary judgment on TMJ Plaintiffs' claims for rescission under federal and state securities laws.[39] For these same reasons, IMC Defendants assert that they are entitled to summary judgment on TMJ Plaintiffs' security fraud claim.[40]

Furthermore, even if the LLC membership interests were a "security," IMC Defendants argue, the "private placement" exemption would exempt them from registration.[41] Specifically, IMC Defendants argue that in the Fifth Circuit, the lack of any widespread, public solicitation is "essentially dispositive on its own."[42] IMC Defendants additionally point to evidence that TMJ Plaintiffs could fend for themselves, as demonstrated by the manner of offering, eligibility of the purchasers, information, and resale restrictions; and therefore, pursuant to the Supreme Court's holding in *SEC v. Ralston Purina Corp.*, the investments are exempt from registration.[43] Accordingly, even assuming that the LLC membership interests were a "security," IMC Defendants argue they are entitled to summary judgment on TMJ Plaintiffs' claims for rescission under federal and state securities laws.[44]

---

[38] *Id.* at 10–11.

[39] *Id.* at 11.

[40] *Id.*

[41] *Id.* at 11–16.

[42] *Id.* at 12 (citing *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)).

[43] *Id.* at 12–16 (citing *SEC v. Ralston Purina Corp.*, 346 U.S. 119, 125 (1953); ABA Sec. of Bus. Law, Cmte. on Fed. Reg. of Secs., *Law of Private Placements (NonPublic Offerings) Not Entitled to Benefits of Safe Harbors — A Report*, 66 BUSINESS LAWYER (Nov. 2010)).

[44] *Id.* at 16.

Next, IMC Defendants argue that IMC Defendants are entitled to summary judgment on TMJ Plaintiffs' misrepresentation and breach of contract claims because forward-looking, oral predictions of the future are not actionable.[45] IMC Defendants point to evidence that the parties' agreements include both merger/integration clauses and no-oral-modification clauses, which IMC Defendants contend preclude reliance on any representations or promises that were not incorporated into the parties' written agreements.[46] In addition, IMC Defendants point to evidence that the agreements which TMJ Plaintiffs signed contemplate a risk of loss, as indicated in a section titled, "**ALLOCATION OF PROFITS <u>AND LOSSES</u>**."[47] Moreover, IMC Defendants argue, the alleged oral representations made by David Crabtree (IMC's CEO) were made in September 2016, a year after the agreements were signed in the summer/fall of 2015; thus, the alleged oral representations could not have been part of the parties' agreements or modifications to them, as the contracts provided that modifications must be made in writing.[48] Accordingly IMC Defendants argue, they are entitled to summary judgment on TMJ Plaintiffs' claims for intentional/negligent misrepresentation, fraudulent inducement, and breach of contract.[49]

Next, IMC Defendants argue that they are entitled to summary judgment on TMJ Plaintiffs' breach of fiduciary duty claim because the members of IMC MOA and IMC NOLA, which are

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at 18 (citing Ex. D-5 (MOA Management Agreement) at ¶4(c); Ex. D-9 (New Orleans Management Agreement) at ¶4(c) (emphasis in original)).

[48] *Id.* at 18–19.

[49] *Id.* at 19.

manager-managed Florida LLCs, do not owe fiduciary duties to each other.[50] Therefore, Defendant IMC Holdings, as a member but not a manager of each, does not owe a fiduciary duty to TMJ Plaintiffs.[51] IMC Defendants also argue that TMJ Plaintiffs have failed to meet their burden of showing that Mario Abal, who allegedly made the misrepresentations to TMJ Plaintiffs that supposedly induced TMJ Plaintiffs to enter into the Operating Agreements, made those representations in his capacity as an agent or employee of IMC Management.[52] Rather, IMC Defendants contend, the evidence shows that Abal worked for the Defendant IMC Holdings.[53] Accordingly, IMC Defendants contend, both Defendant IMC Holdings and Defendant IMC Management are entitled to summary judgment on the breach of fiduciary duty claim.[54]

IMC Defendants next argue that they are entitled to summary judgment on TMJ Plaintiffs' LUTPA claim because: (1) such a claim does not apply to an alleged securities violation; (2) the claim is preempted; and (3) TMJ Plaintiffs lack standing to assert such a claim.[55] IMC Defendants further note that the first two reasons are pure issues of law,[56] and only the third involves a question of fact.[57] With respect to the third reason, IMC Defendants assert that a LUTPA claim is only available to direct consumers or business competitors, and TMJ Plaintiffs have failed to meet their

---

[50] *Id.*

[51] *Id.*

[52] *Id.* at 20.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] IMC Defendants adopt and incorporate their briefing in support of their previously filed motion to dismiss on those counts. *Id.* (citing Rec. Doc. 21-1 at 21–24; Rec. Doc. 29 at 8–10).

[57] *Id.*

burden of showing that they fall into either of these two categories.[58] Accordingly, IMC Defendants argue, they are entitled to summary judgment on the LUTPA claim.[59]

Finally, with respect to TMJ Plaintiffs' claim in the Amended Complaint for anticipatory breach of contract relating to the New Orleans Restaurant, IMC Defendants argue that TMJ Plaintiffs, not IMC Defendants, failed to perform their obligations pursuant to the New Orleans agreements.[60] Specifically, IMC Defendants point to evidence that TMJ Plaintiffs was required to construct a "shell" for the New Orleans Restaurant and that TMJ Plaintiffs put development of the New Orleans Restaurant on hold "many months ago."[61] Thus, IMC Defendants assert, they are entitled to summary judgment on TMJ Plaintiffs' claims regarding the New Orleans Restaurant.[62]

**B.      *TMJ Plaintiffs' Arguments in Opposition to the Motion for Summary Judgment***

In opposition, TMJ Plaintiffs first argue that their demand for rescission is not time-barred because TMJ Plaintiffs did not learn of IMC Defendants' failure to register until long after the November 2015 amended agreement was executed.[63] TMJ Plaintiffs argue that the statute of limitations does not begin to run until a plaintiff discovers (or should have discovered by the exercise of reasonable diligence) the underlying violation.[64] Despite due diligence, TMJ Plaintiffs

---

[58] *Id.* at 21 (citing *Computer Mgmt. Assist. Co. v. DeCastro, Inc.*, 220 F.3d 396 (5th Cir. 2000); *Gardes Directional Drilling v. U.S. Turnkey Explor. Co.*, 98 F.3d 860 (5th Cir. 1996); *Swoboda v. Manders*, No. 14-19-SCR, 2015 U.S. Dist. LEXIS 164870, at *6–7 (M.D. La. Dec. 9, 2015); *Baba Lodging, LLC v. Wyndham Worldwide Opers., Inc.*, No. 10-1750, 2012 U.S. Dist. LEXIS 36891, at *10 (W.D. La. Mar. 19, 2012)).

[59] *Id.*

[60] *Id.*

[61] *Id.* at 22.

[62] *Id.* at 22.

[63] Red. Doc. 86 at 7.

[64] *Id.*

contend, IMC Defendants' failure to register was not discovered until January 2017, when TMJ Plaintiffs received updated pro formas reflecting the actual operations from Fourth Quarter 2016; when TMJ Plaintiffs received daily sales reports in April 2017; and when TMJ Plaintiffs began investigating their claims.[65] Moreover, TMJ Plaintiffs argue, when they learned of IMC Defendants failure to comply with the applicable securities laws and failure to register is a fact issue not appropriate for resolution on a motion for summary judgment.[66] Accordingly, TMJ Plaintifs argue that IMC Defendants' motion with respect to TMJ Plaintiffs' demand for rescission must be denied.[67]

Next, TMJ Plaintiffs argue that IMC Defendants' reliance on *Marine Bank* for the proposition that a negotiated, one-on-one transaction does not involve a "security" as defined by the Securities Act of 1933 is misplaced.[68] According to TMJ Plaintiffs, *Marine Bank* revolved around "important differences between a certificate of deposit . . . and other long-term debt obligations" and resulted in the Supreme Court reversing the court below because of the "unusual instruments" involved in that particular case.[69] Moreover, TMJ Plaintiffs assert, the Supreme Court did not hold that the instruments in *Marine Bank* were not securities due to the fact they were one-on-one agreements.[70] As no such absolute rule exists, TMJ Plaintiffs contend IMC Defendants argument that the LLC membership interests are not securities because they were one-

---

[65] *Id.* at 8.

[66] *Id.*

[67] *Id.*

[68] *Id.* at 8–9 (citing *Marine Bank*, 455 U.S. at 560).

[69] *Id.* at 9 (citing *Marine Bank*, 455 U.S. at 558–59).

[70] *Id.*

on-one agreements is incorrect.[71]

TMJ Plaintiffs next argue that the LLC membership interests are securities inasmuch as they are "investment contracts" as set forth by the Supreme Court in *SEC v. Howey*.[72] Contrary to IMC Defendants' arguments, TMJ Plaintiffs aver that they did not have control over the investment and they relied completely on the efforts of IMC Defendants in connection with their investments in the Minneapolis Restaurant and the New Orleans Restaurant.[73] According to TMJ Plaintiffs, IMC Defendants have presented no admissible summary judgment evidence to the contrary.[74] Therefore, TMJ Plaintiffs maintain that there is no dispute as to any material fact and that summary judgment should be granted in TMJ Plaintiffs' favor that the agreements are securities, or alternatively, summary judgment in favor of IMC Defendants should be denied if the Court determines a genuine issue of material fact exists.[75]

Subsequently, TMJ Plaintiffs argue that the "private placement exemption" is inapplicable because IMC Defendants did not affirmatively seek the exemption.[76] TMJ Plaintiffs aver that if a party uses Regulation D as a safe harbor for its securities offering, the party "must file a notice on Form D" with the SEC within fifteen days after the first sale of securities in the offering, and IMC

---

[71] *Id.*

[72] *Id.* (citing *SEC v. Howey*, 328 U.S. 293 (1946)).

[73] *Id.*

[74] *Id.*

[75] *Id.* at 10.

[76] *Id.* (citing 17 C.F.R. 230.503(a)(1); *Woolf v. S. D. Cohn & Co.*, 515 F.2d 591, 605 (5th Cir. 1975), rev'd on other grounds, 426 U.S. 944 (1976)).

Defendants did not.[77] Nevertheless, TMJ Plaintiffs argue that IMC Defendants have not established the four factors of the private placement exemption.[78] With respect to the "information" factor, TMJ Plaintiffs asset there is no dispute that TMJ Plaintiffs were not provided the appropriate access to the information they should have received; and therefore, summary judgment is proper in favor of TMJ Plaintiffs, or there is at least a genuine dispute as to a material fact regarding the information factor.[79]

According to TMJ Plaintiffs, "[t]he remaining three factors further illustrate the myriad of genuine disputes regarding material facts improper for consideration at the motion for summary judgment stage."[80] For example, TMJ Plaintiffs argue, whether TMJ Plaintiffs solicited IMC Defendants for investment; whether TMJ Plaintiffs' members are financially sophisticated enough to assess and bear financial risk; and the degree to which provisions of the operating agreements between the Parties restricted possible resale are each factual determinations that require a fact finder to credit or discredit the evidence and, as such, cannot be subject to summary judgment as a matter of law.[81] Accordingly, TMJ Plaintiffs argue, IMC Defendants' motion for summary judgment should be denied as to the securities claims.[82]

Next, TMJ Plaintiffs argue that summary judgment is inappropriate on TMJ Plaintiffs' breach of contract and misrepresentation claims to the extent that IMC Defendants misstate the

---

[77] *Id.* (quoting 17 C.F.R. 230.503(a)(1)).

[78] *Id.* at 11.

[79] *Id.*

[80] *Id.* at 12.

[81] *Id.*

[82] *Id.*

law regarding integration clauses and future predictions.[83] Specifically, TMJ Plaintiffs contend that integration clauses relate to parol evidence and do not automatically preclude a breach of contract claim based on the Parties' failure to perform the terms of the contract.[84] Furthermore, TMJ Plaintiffs argue, an integration clause does not automatically preclude IMC Defendants' liability for other claims, such as negligent misrepresentation.[85] TMJ Plaintiffs argue that the general rule that fraud and misrepresentation claims cannot be predicated on future-looking statements is subject to exceptions, particularly where the person making the statement as to a future event is guilty of an actual fraudulent intent.[86] Accordingly, without more, TMJ Plaintiffs contend, IMC Defendants' motion fails as to the claims for breach of contract and negligent misrepresentation.[87]

TMJ Plaintiffs additionally point to evidence of misrepresentations made by Mr. Abal pertaining to the strong performance of the Minneapolis Restaurant and/or how well-executed the deal was.[88] In contrast, TMJ Plaintiffs point to evidence that mistakes were made with respect to drafting the Minneapolis Restaurant budget and of remarks made by employees of IMC Defendants on either Mr. Abal's poor performance and/or just how incorrect the Minneapolis Restaurant budget was.[89] Accordingly, TMJ Plaintiffs assert, there are material facts in dispute

---

[83] *Id.* at 13.

[84] *Id.* (citing *Water Craft Mgmt., LLC v. Mercury Maine*, 361 F. Supp. 2d 518, 551 (M.D. La. 2004)).

[85] *Id.*

[86] *Id.*

[87] *Id.*

[88] *Id.* at 13–14.

[89] *Id.* at 14–15.

regarding these claims, rendering a grant of summary judgment improper.[90]

Next, TMJ Plaintiffs argue that IMC Defendants incorrectly contend that they owed no fiduciary duties to TMJ Plaintiffs, and therefore, IMC Defendants' motion for summary judgment as to the breach of fiduciary claim should be denied.[91] Specifically, TMJ Plaintiffs argue that IMC Defendants acknowledge that pursuant to Florida law, a manager of a manager-managed LLC owes fiduciary duties to its members, and the Management Agreement, which is included and incorporated by the Operating Agreement, establishes that IMC Holdings is the Managing Member.[92] With respect to Mr. Abal's role in making the alleged misrepresentations, TMJ Plaintiffs contend that Mr. Abal is the "Chief Development Officer of IMC Holdings."[93] TMJ Plaintiffs further aver that during the course of Mr. Motwani's dealings with Mr. Abal, on behalf of TMJ Plaintiffs, Mr. Motwani understood that Mr. Abal was the Chief Development Officer of both IMC Holdings and IMC Management.[94] According to TMJ Plaintiffs, Mr. Abal did not hold himself out as an employee of IMC Holdings or IMC Management, and he did not make that distinction when he spoke to Mr. Motwani on behalf of IMC.[95] Moreover, TMJ Plaintiffs argue, IMC Defendants' attempt to label Mr. Abal as an employee of IMC Holdings acting exclusively on behalf of IMC Holdings, so as to avoid liability for IMC Management is "nonsensical."[96]

---

[90] *Id.* at 15.

[91] *Id.*

[92] *Id.*

[93] *Id.* at 15–16.

[94] *Id.* at 16.

[95] *Id.*

[96] *Id.*

Accordingly, TMJ Plaintiffs argue, IMC Defendants motion for summary judgment with respect to TMJ Plaintiffs' breach of fiduciary duty claim should be denied.[97]

TMJ Plaintiffs next argue that IMC Defendants are not entitled to summary judgment on the LUTPA claims because: (1) whether LUTPA claims apply to securities violations can only be addressed after the Court determines if the securities fraud claim survives summary judgment; (2) the LUTPA claims are not preempted because TMJ Plaintiffs "only later discovered the underlying unfair trade practices and could not file suit until then;" and (3) whether TMJ Plaintiffs have standing as a "direct consumer" or "business competitor" is a material fact that is genuinely in dispute.[98] Furthermore, TMJ Plaintiffs aver, LUTPA claims are not limited to consumers and business competitors, but are also available to any persons who suffer ascertainable losses as a result of violations of LUTPA.[99] Accordingly, TMJ Plaintiffs argue that summary judgment on the LUTPA claims is not appropriate.[100]

Finally, TMJ Plaintiffs argue that they have a right to mitigate losses, and therefore, the anticipatory breach claim is proper.[101] According to TMJ Plaintiffs, under Louisiana law, "[a] plaintiff is legally justified in treating a contract as breached when he is informed by facts and circumstances regarding a defendant's repudiation of their promise(s) under the contract."[102] TMJ Plaintiffs contend that "[w]hat constitutes a breach of the agreements between the Parties, if and

---

[97] *Id.*

[98] *Id.*

[99] *Id.* at 16–17 (citing *Haygood v. Dies*, 127 So. 3d 1008, 1012 (La. App. 2013)).

[100] *Id.* at 17.

[101] *Id.*

[102] *Id.*

when either Party manifested an unwillingness to perform their obligations, and whether such a party was justified based on the factual circumstances are all material facts which the Parties genuinely dispute."[103] Therefore, TMJ Plaintiffs argue, summary judgment on the claim for declaratory judgment regarding TMJ Plaintiffs' anticipatory breach is premature at this time.[104]

**C.     *IMC Defendants' Arguments in Further Support of the Motion for Summary Judgment***

IMC Defendants first argue that the "majority rule" recognized by both circuit and district courts, including district courts in this Circuit, is that the one-year limitations period is not subject to any tolling or discovery rule.[105] Even if the Court were inclined to go against the majority rule, IMC Defendants argue, TMJ Plaintiffs have failed to point to any evidence that IMC Defendants led TMJ Plaintiffs to believe that the sales of the LLC membership interests had been registered, or would be registered, so as to justify tolling.[106] Accordingly, IMC Defendants assert, regardless of whether tolling is permitted, TMJ Plaintiffs claims for rescission are time-barred.[107]

Next, IMC Defendants argue that the Supreme Court's decision in *Marine Bank* is dispositive on the issue that an interest, which is acquired after months of back-and-forth, one-on-one negotiation between counsel is not a security.[108] IMC Defendants represent that in *Marine Bank*, the Supreme Court explained that "Congress intended the securities laws to cover those instruments ordinarily and commonly considered to be securities in the commercial world. . . . [A]

---

[103] *Id.*

[104] *Id.*

[105] Rec. Doc. 108 at 1 (citing *Blatt v. Merrill Lynch, Pierce, Fenner & Smith*, 916 F. Supp. 1343, 1352 (D.N.J. 1996)).

[106] *Id.* at 2.

[107] *Id.*

[108] *Id.* (citing *Marine Bank v. Weaver*, 455 U.S. 551 (1982)).

security is an instrument in which there is 'common trading.'"[109] According to IMC Defendants, TMJ Plaintiffs have failed to identify any exchange or marketplace in which there is any "common trading" of LLC membership interests in Margaritaville restaurants because none exist. [110] Furthermore, IMC Defendants aver, no marketplace or exchange can exist because the agreements have entire sections for resale restrictions.[111] Moreover, IMC Defendants assert that the only purpose of the Supreme Court identifying the one-off instruments before it in *Marine Bank* as "unusual instruments" was to distinguish them from "those instruments ordinarily and commonly considered to be securities in the commercial world."[112] Accordingly, IMC Defendants argue that no genuine dispute of material fact exists as to whether the LLC investments in this case are securities, where the evidence shows and the case law supports that they are not.[113]

Furthermore, IMC Defendants argue that the private placement exemption applies because Regulation D is not the exclusive method to satisfy the requirements of the exemption. [114] According to IMC Defendants, in the Fifth Circuit, the absence of a widespread or public offering is effectively dispositive in determining that the private placement exemption applies. [115] Furthermore, IMC Defendants point to deposition testimony to establish that TMJ Plaintiffs

---

[109] *Id.* (citing *Marine Bank*, 455 U.S. at 556).

[110] *Id.* at 3.

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] *Id.* at 3 (citing ABA Sec. of Bus. Law, Cmte. on Fed. Reg. of Secs., Law of Private Placements (Non-Public Offerings) Not Entitled to Benefits of Safe Harbors — A Report, 66 BUSINESS LAWYER (Nov. 2010); *SEC v. Kahlon*, 141 F. Supp. 3d 675, 679 (E.D. Tex. 2015)).

[115] *Id.* at 3–4 (citing *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)).

solicited IMC Defendants in this case, which IMC Defendants aver alone establishes the manner-of-offering factor.[116] Thus, IMC Defendants contend, the private placement exemption applies even if the LLC investments are securities.[117]

Next, IMC Defendants argue that the fraud and misrepresentation claims fail because the purpose of an integration clause is to indicate that the written agreement between parties represents the complete understanding between them.[118] According to IMC Defendants, to allow alleged oral representations to override written contracts with integration clauses, as TMJ Plaintiffs seek to do, would defeat the purpose of integration clauses.[119] IMC Defendants further argue that TMJ Plaintiffs failed to adduce competent evidence of fraudulent intent, and therefore, the general rule that fraud and misrepresentation claims cannot be predicated on future-looking statements applies.[120]

IMC Defendants next argue that TMJ Plaintiffs' argument that the one-year LUTPA preemptive tolled is baseless because peremptive periods cannot be tolled.[121]

Finally, with respect to the New Orleans Operating Agreement, IMC Defendants argue, TMJ Plaintiffs have not introduced any competent evidence that IMC Defendants have affirmatively renounced a single one of its obligations or responsibilities under that agreement.[122]

---

[116] *Id*. at 4 (citing Trotter Depo., at 24:2-20 (Ex. C to IMC's Motion for Summary Judgment)).

[117] *Id*.

[118] *Id*.

[119] *Id*.

[120] *Id*. at 4–5.

[121] *Id*. (citing LA. CIV. CODE. art. 3461; LA. REV. STAT. § 51:1409(E)).

[122] *Id*.

Therefore, IMC Defendants contend they are entitled to summary judgment on TMJ Plaintiffs' anticipatory breach of contract claims under both Louisiana and Florida law.[123]

**D.**     *TMJ Plaintiffs' Supplemental Memorandum in Further Opposition to IMC Defendants' Motion for Summary Judgment*

In a supplemental response to IMC Defendants' motion for summary judgment, TMJ Plaintiffs argue that recent depositions of IMC Defendants' witnesses has provided additional evidence that "IMC consistently and repeatedly told TMJ exactly what they needed to hear in order and showed them exactly what they needed to see in order to induce their investment in NOLA and MOA."[124]

With respect to the securities claims, TMJ Plaintiffs point to deposition testimony showing that they did not have the right to control the investment and that they relied completely on the efforts of IMC Defendants in connection with their investments in the Minneapolis Restaurant and the New Orleans Restaurant.[125] Accordingly, TMJ Plaintiffs argue, there is at least a genuine issue of material fact as to whether the investments fall within the definition of a security, and therefore, summary judgment should be denied.[126]

In addition, TMJ Plaintiffs argue that IMC Defendants did not file a Form D and have not

---

[123] *Id* (citing *Louisiana Stad. & Expos. Dist. v. Financial Guar. Ins. Co.*, 2010 U.S. Dist. LEXIS 47101, at *43-44 (S.D.N.Y. May 11, 2010) (applying Louisiana law); *Latter & Blum, Inc. v. Ditta*, 223 So. 3d 54, 59-60 (La. App. 2017); *Skymark Real Estate Invs., LLC v. 7L Capital, LLC*, 2013 U.S. Dist. LEXIS 35291, at *11 (M.D. Fla. Mar. 14, 2013)).

[124] Rec. Doc. 130 at 2.

[125] *Id.* at 8–9.

[126] *Id.* at 9.

met their burden of proving that they qualify for the private placement exemption.[127] Specifically, TMJ Plaintiffs argue that a genuine dispute of material fact exists as to whether TMJ Plaintiffs were provided the appropriate access to information it should have received.[128] Furthermore, TMJ Plaintiffs state, IMC Defendants contend that TMJ Plaintiffs solicited IMC Defendants for investment, that TMJ Plaintiffs are financially sophisticated enough to assess and bear financial risk, and the degree to which provisions of the operating agreements between the Parties restricted possible resale.[129] Each of these facts, TMJ Plaintiffs argue, "intrinsically require a fact finder to credit or discredit the evidence to make a sufficient determination and, as such, cannot be subject to summary judgment as a matter of law."[130]

TMJ Plaintiffs next argue that summary judgment is not appropriate on the breach of contract and misrepresentation claims because a statement concerning a future event may be actionable if there is evidence of an actual fraudulent intent.[131] In addition, TMJ Plaintiffs point to evidence regarding representations made pertaining to the strong performance of the Minneapolis restaurant and/or how well-executed the deal was.[132]

Next, TMJ Plaintiffs repeat their argument that summary judgment is not appropriate on the breach of fiduciary duty claim because IMC Holdings is the managing member of IMC MOA, and Mario Abal did not hold himself out as an employee of IMC Holdings or IMC Management

---

[127] *Id.* at 10.

[128] *Id.* at 11.

[129] *Id.*

[130] *Id.*

[131] *Id.* at 13.

[132] *Id.* at 13–17.

when making the alleged misrepresentations to TMJ Plaintiffs.[133] Thus, TMJ Plaintiffs contend the argument that IMC Management cannot be liable for breach of fiduciary duty based on the statements made by Mr. Abal because he is an employee of IMC Holdings fails.[134]

Finally, TMJ Plaintiffs repeat their argument that they have a right to mitigate losses based on TMJ Plaintiffs' anticipatory breach of the New Orleans Restaurant agreements.[135] TMJ Plaintiffs recite the standard for anticipatory breach, and argue that "what constitutes a breach of the agreements between the Parties, if and when either Party manifested an unwillingness to perform their obligations, and whether such a party was justified based on the factual circumstances are all material facts which the Parties genuinely dispute."[136] Therefore, TMJ Plaintiffs contend, summary judgment on their claim for anticipatory breach of contract would be premature.[137]

### III. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[138] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or

---

[133] *Id*. at 17–18.

[134] *Id*. at 18.

[135] *Id*.

[136] *Id*.

[137] *Id*. at 19.

[138] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

weighing the evidence."[139] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[140] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[141]

"[A] nonmoving party is not entitled to rest on his pleadings, but must carry his burden of providing evidence of a genuine issue of material fact."[142] "That burden can be met by depositions, answers to interrogatories and admissions on file and affidavits."[143] The Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment."[144] However, a nonmovant's deposition testimony is often considered by a court in recognizing that a genuine issue of material fact exists, which precludes summary judgment.[145]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes

---

[139] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[140] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[141] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[142] *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992) (citing *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)); *see also Celotex*, 477 U.S. at 325; *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[143] *Id*. (citing Fed. R. Civ. P. 56(c)).

[144] *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed.Appx. 306, 307 (5th Cir. 2011) (per curiam) (citing *DirectTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005); *United State v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).

[145] *See, e.g., Vetter v. Frosch*, 599 F.2d 630 (5th Cir. 1979); *see also, e.g., King*, 974 F.2d at 656 (5th Cir. 1992).

demonstrate the absence of a genuine issue of material fact.[146] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[147] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[148] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[149] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[150]

## IV. Analysis

### A.    Claims for Rescission Under the Securities Act of 1933

IMC Defendants first argue that TMJ Plaintiffs' rescission claims brought under the Securities Act of 1933 are time-barred, as more than one year has passed between the time the alleged securities were acquired and the time of filing of this action. In response, TMJ Plaintiffs assert that their demand for rescission is not time-barred because TMJ Plaintiffs did not learn of

---

[146] *Celotex*, 477 U.S. at 323.

[147] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[148] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[149] *Little*, 37 F.3d at 1075.

[150] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

IMC Defendants' failure to register until long after the November 2015 amended agreement was executed, and the statute of limitations does not begin to run until a plaintiff discovers (or should have discovered by the exercise of reasonable diligence) the underlying violation.

In the amended complaint, TMJ Plaintiffs seek declaratory judgment for rescission of the operating agreements pursuant to Section 12(a)(1) of the Securities Act of 1933 for failing to properly register the securities investment in the Minneapolis Restaurant and the New Orleans Restaurant pursuant to Regulation D and Section 5 of the Act.[151]

Section 12(a)(1), which is codified at 15 U.S.C. §§ 77*l*(a)(1), provides that any person who offers or sells a security in violation of Section 77e shall be liable "to the person purchasing such security from him, who may sue either at law or in equity . . . to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." Section 5 of the Securities Act of 1933, codified at 15 U.S.C. § 77e, states, "it shall be unlawful for any person, directly or indirectly . . . to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise . . . ."

The limitations period is found at 15 U.S.C. § 77m, which states:

No action shall be maintained to enforce any liability created under section 77k or 77*l*(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(a)(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section

---

[151] Rec. Doc. 46 at 31–34.

77*l*(a)(2) of this title more than three years after the sale.

Therefore, the plain language of the statute indicates that a "discovery rule" applies an action brought under Section 77k or Section 77l(a)(2), but an action brought under Section 77*l*(a)(1) must be filed within one year after the violation upon which it is based.[152]

IMC Defendants cite a First Circuit case and two district court cases holding that no discovery rule applies to the one year limitation period.[153] TMJ Plaintiffs argue that these cases are not binding but do not themselves cite any binding authority that the discovery rule and the doctrine of equitable tolling applies to the one year limitation period governing nonregistration claims under Section 12(1).

In *Mason v. Marshall*, a case decided by a section of the Northern District of Texas and affirmed by the Fifth Circuit, the plaintiffs brought a claim for rescission under Section 12(1), alleging that the defendants violated Section 5 of the Securities Act of 1933 by offering for sale and selling securities without a registration statement.[154] The district court determined that the limitation period begins to run when Section 5 is "first violated," *i.e.* "when the mails or interstate commerce are used to offer, sell or deliver an unregistered security."[155] Moreover, the court in *Mason* did not contemplate that a discovery or equitable tolling period would apply.[156]

Furthermore, in *Doran v. Petroleum*, the Fifth Circuit affirmed a district court's

---

[152] 15 U.S.C. § 77m

[153] Rec. Doc 65-1 (citing *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658 (E.D. Tex. 2004); *Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir. 1978); and *Blatt v. Merrill Lynch, Pierce, Fenner & Smith*, 916 F. Supp. 1343, 1352 (D.N.J. 1996)).

[154] *Mason v. Marshall*, 412 F. Supp. 294, 299 (N.D. Tex. 1974), *aff'd*, 531 F.2d 1274 (5th Cir. 1976).

[155] *Id.*

[156] *Id.*

determination that the plaintiff's claim seeking to rescind a limited partnership agreement was time-barred under to 15 U.S.C. § 77m.[157] In *Doran*, the Fifth Circuit stated, "In deciding the statute of limitations issue . . . the thorough trial judge held that the relevant inquiry was which of the defendant's activities offer, sale, or delivery occurred last as that was the time from which to measure the limitation period."[158] The Fifth Circuit further stated, "This would appear to be the most lenient standard and it is the one we implicitly adopted in *Mason v. Marshall*."[159]

Thus, notwithstanding "the apparent split of authority"[160] among courts in different circuits as to whether the discovery rule and the doctrine of equitable tolling applies to the one year limitation period governing nonregistration claims under Section 12(1), it appears that the Fifth Circuit would be inclined to find based on its decisions in *Mason* and *Doran*, that the one year limitations period applicable to claims brought under Section 12(1) is absolute and does not allow for a "discovery rule" or equitable tolling.

In this case, IMC Defendants assert that more than one year has passed between the relevant transactions and the time this action was filed. Moreover, this action was filed on May 3, 2017, and IMC Defendants aver that the latest execution of an agreement, the MOA Amended Operating Agreement, occurred on November 2015.[161] TMJ Plaintiffs presents no evidence to dispute these assertions. Accordingly, because there is no genuine issue of material fact, the Court finds that

---

[157] *Doran v. Petroleum Mgmt. Corp.*, 576 F.2d 91 (5th Cir. 1978).

[158] *Id.* at 93.

[159] *Id.*

[160] *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1352 (D.N.J. 1996)

[161] Rec. Doc. 65-1.

IMC Defendants are entitled to judgment as a matter of law that the rescission claims brought under the Securities Act of 1933 are time-barred.

**B.** ***Claims for Securities Fraud Under the Securities Exchange Act of 1934 and Louisiana Blue Sky Laws***

IMC Defendants argue that they are entitled to summary judgment on TMJ Plaintiffs' claims brought under the Securities Exchange Act of 1934 and Louisiana Blue Sky laws because the transactions do not meet the definition of "securities" under federal or state law as the investments were subject to one-on-one negotiations by counsel and TMJ Plaintiffs exercised significant control over the restaurants, such that the *Howey* test is not met. TMJ Plaintiffs argue that the investments are securities because they invested in a common enterprise and expected profits from the investments based solely on the actions of IMC Defendants.

The Supreme Court has acknowledged that the definition of a security under the Securities Exchange Act of 1934 and the Securities Act of 1933 are "virtually identical."[162] "Investment contracts" are included in the definition of a security under both the Securities Exchange Act of 1934 and the Securities Act of 1933.[163] In *SEC v. W.J. Howey Co.*, the Supreme Court held that

---

[162] *Reves v. Ernst & Young*, 494 U.S. 56, 61, n.1 (1990) (citing *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 847, n. 12 (1975)).

[163] 15 U.S.C. §77b, which codifies the definitions section of the Securities Act of 1933, defines the term "security" to mean:

> Any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, **investment contract**, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 78c, which codifies the definitions section of the Securities Exchange Act of 1934 defines the term security to mean:

an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a promoter or a third party."[164]

In *Marine Bank v. Weaver*, the Supreme Court stated that the test for whether or not an instrument is a security is "what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect."[165] "The terms mentioned are not to be considered securities if 'the context otherwise requires.'"[166] Although "the definition of 'security' in the Securities Exchange Act of 1934 is quite broad," the Act is "not intend[ed] to provide a broad federal remedy for all fraud."[167] "[T]he term 'security' was meant to include 'the many types of instruments that in our commercial world fall within the ordinary concept of a security.'"[168] "It includes ordinary stocks and bonds, along with the 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'"[169]

---

The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, **investment contract**, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option . . . .

[164] 328 U.S. 293, 298 (1946); *see also Youmans v. Simon*, 791 F.2d 341, 345 (5th Cir. 1986) (citing *Howey* as the established test for whether an agreement is an investment contract).

[165] *Maring Bank v. Weaver*, 455 U.S. 551, 556 (1982) (quoting *SEC v. United Benefit Life Ins. Co.*, 387 U.S. 202, 211 (1967)).

[166] *Id*. (internal citations and quotation marks omitted).

[167] *Id.* at 555–56.

[168] *Id*. (citing H.R.Rep.No.85, 73d Cong., 1st Sess., 11 (1933)).

[169] *Id*. at 555 (quoting *Howey*, 328 U.S. at 299).

In reasoning that the agreement in *Marine Bank* did not fall within "the ordinary concept of a security," the Supreme Court noted that "[t]he unusual instruments found to constitute securities in prior cases involved offers to a number of potential investors, not a private transaction as in this case." The Supreme Court compared the facts of *Marine Bank* to *Howey*, where 42 persons purchased interests in a citrus grove during a four-month period, and *SEC v. C. M. Joiner Leasing Corp.*, where offers to sell oil leases were sent to over 1,000 prospects.[170] Unlike those cases, the Supreme Court noted that no prospectus was distributed to the claimants or to other potential investors, and "the unique agreement they negotiated was not designed to be traded publicly."[171] Furthermore, the Supreme Court observed that the provision permitting claimants specific uses "underscore[d] the unique character of the transaction."[172] Similarly, the Supreme Court reasoned, the provision that gave claimants veto power over future loans gave them a measure of control over the operation of the business not characteristic of a security.[173] Accordingly, the Supreme Court held in *Marine Bank* that the "unique agreement, negotiated one-on-one by the parties," was not a security.[174]

In *Youmans v. Simon*, the Fifth Circuit confirmed that *Howey* establishes the test for what constitutes an "investment contract," *i.e.* "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a

---

[170] *Id.* at 559–60 (citing *Howey*, 328 U.S. at 299; *SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 351 (1943)).

[171] *Id.* at 560.

[172] *Id.*

[173] *Id.*

[174] *Id.*

promoter or a third party."[175] However, the Fifth Circuit recognized that "there has been some modification to the requirement that profits result 'solely from the efforts of others'" as the term is "interpreted in a flexible manner, not in a literal sense."[176] Therefore, "[t]he proper inquiry now is whether 'the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'"[177] Relying on *Marine Bank*, the Fifth Circuit further stated, "Agreements negotiated one-on-one creating enterprises in which investors are actively involved, knowledgeable, and able to protect their interests are not within the ambit of the federal securities laws."[178]

In support of their argument that TMJ Plaintiffs' investments are not securities, IMC Defendants point to deposition testimony confirming that Brad Axelrod, a partner with McGlinchey Stafford PLLC, represented TMJ Plaintiffs in connection with all the agreements at issue, as evidence that the investments were subject to one-on-one negotiations.[179] IMC Defendants also point to documents showing that Axelrod, on behalf of TMJ Plaintiffs, negotiated and redlined drafts of the original and amended MOA agreements, as well as the New Orleans agreements and sublease.[180] Furthermore, IMC Defendants point to the following evidence that

---

[175] *Youmans*, 791 F.2d at 345 (quoting *Howey*, 328 U.S. at 298).

[176] *Id*. (citing *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir.)).

[177] *Id*. (citing 645 F.2d at 418).

[178] *Youmans*, 791 F.2d at 346.

[179] Rec. Doc. 65-1 at 7 (citing 2/20/18 Depo. of Dr. Tarun Jolly ["Jolly Depo."], at 87:12-19, 94:10-18, 112:14-20 (Ex. B); 2/21/18 Depo. of Logan Trotter ["Trotter Depo."], at 25:21 to 26:7, 33:4 to 34:5, 72:16- 23, 76:7-9 (Ex. C); Motwani Depo., at 124:14-25 (Ex. A)).

[180] *Id*. (citing, *in globo* Ex. D-3 (3/25/15 Axelrod email covering redline of New Orleans sublease [Bates TMJ 4414]; 6/10/15 Axelrod email covering redlines of New Orleans Operating and Managements Agreements [Bates TMJ 4147]; 7/24/15 Axelrod email covering redline of MOA Operating Agreement [TMJ 4932]; 11/13/15 Axelrod email with counterproposal regarding amended MOA agreement [TMJ 5289])).

TMJ Plaintiffs had sufficient control of the operations to preclude "security" status under *Howey*:

- In their depositions, TMJ members admitted that TMJ selected the contractor who built out the leased MOA premises for use as a Margaritaville-themed restaurant.[181]

- The parties' agreements gave TMJ substantial control over various aspects of the MOA entity. For example, the Operating Agreement requires TMJ's approval for the transfer or pledge of substantial assets; mergers; dissolution; bankruptcy; termination or modification of the Sublicense Agreement (governing use of the "Margaritaville" name); and issuance of additional voting units. The agreement also gives members with at least a 50% interest (which TMJ had under the Operating Agreement) the right to approve budgets and exceeding budgets, and members with at least a 25% interest have the power to remove the manager for a laundry list of causes. And, under the Management Agreements, TMJ can remove the manager if the restaurants lose money for two consecutive years. In the event of removal of a manager, TMJ could select the new manager (which could be TMJ).[182]

- In their depositions, TMJ members admitted they reviewed and approved the contractor's invoices.[183]

- With respect to plans for a New Orleans restaurant, TMJ's members testified it was TMJ's responsibility, not IMC's, to construct a "shell" to house a New Orleans Margaritaville, and to build out that shell for that purpose.[184] These TMJ responsibilities are also set forth in the New Orleans Operating Agreement and the Sublease attached thereto.[185] TMJ also enjoyed the same powers over the New Orleans entity that it had over the MOA entity.[186]

---

[181] *Id.* at 9 (citing Jolly Depo., at 119:20-25 (Ex. B); Trotter Depo., at 110:7-11 (Ex. C); Motwani Depo., at 42:21 to 43:6 (Ex. A).).

[182] *Id.* (citing See MOA Operating Agreement (Ex. D-4) at ¶¶2.5, 2.5.2, 4.1.2, 4.1.3, 4.2, 4.2.5, 4.2.7, 4.3 & 4.4; and MOA Management Agreements (Exs., D-5 & D-7) at ¶¶2(i) & 4(c)).

[183] *Id.* at 10 (citing Trotter Depo., at 110:16-23 (Ex. C)).

[184] *Id.* (citing Jolly Depo., at 135:6-11 (Ex. B); Trotter Depo., at 118:12 to 119:4 (Ex. C); Motwani Depo., at 40:15-19 (Ex. A)).

[185] *Id.* (citing Ex. D-8 at ¶2.5.3 (requiring TMJ to sublease premises to New Orleans entity); and Sublease attached as Ex. B thereto at Article 9)).

[186] *Id.* (citing Ex. D-8 (New Orleans Operating Agreement) at ¶¶2.5, 2.5.2 [same as 2.5.3 for MOA], 4.1.2, 4.1.3, 4.2, 4.2.5, 4.2.7, 4.3 & 4.4, and Ex. D-9 (New Orleans Management Agreement) at ¶¶2(i) & 4(c)).

In opposition, TMJ Plaintiffs point to evidence that they were not "sophisticated investors with experience in sit-down chain restaurants such as Margaritaville."[187] Furthermore, TMJ Plaintiffs point to the definitions of "Manager" and "Member" in the agreements as evidence that they did not have control over the investments.[188]

Thus, disputed issues of fact exist as to whether the investors were "knowledgeable, and able to protect their interests are not within the ambit of the federal securities laws;"[189] and whether TMJ Plaintiffs were led to "expect profits solely from the efforts of a promoter or a third party."[190] When assessing whether a dispute as to any material fact exists, the court refrains from making credibility determinations or weighing the evidence.[191] Accordingly, summary judgment on the issue of whether the investments in the Minneapolis Restaurant and the New Orleans Restaurant constitute securities, such that TMJ Plaintiffs' claims pursuant to federal securities law should be dismissed, is not appropriate at this stage. Thus, the Court will deny IMC Defendants motion for summary judgment as to the security fraud claim brought under the Securities Exchange Act of 1934.

IMC Defendants also seek summary judgment on TMJ Plaintiffs' claims brought under Louisiana's "Blue Sky" laws. Louisiana Revised Statute § 51:705, which requires that securities offered or sold in Louisiana be registered, states, in relevant part:

---

[187] Rec. Doc. 86 at 12 (citing Ex. E. at ¶ 5.).

[188] Rec. Doc. 86 (citing Rec. Doc. 60, Ex. B at ¶¶ 4, 13-15; Rec. Doc. 60, Ex. C-1 at p. 3 (definitions of "Manager" and "Member"), §§ 2.1, 3.1, 4.1, ; id. Rec. Doc. 60, Ex. J at p. 3 (definitions of "Manager" and "Member"), §§ 2.1, 3.1, 4.1.).

[189] *Youmans*, 791 F.2d at 346.

[190] *Howey*, 328 U.S. at 298.

[191] *Delta & Pine Land Co.*, 530 F.3d at 398–99.

It shall be unlawful for any person to offer for sale or sell any securities in this state unless any of the following conditions are met: (1) They are subject to an effective registration statement under this Part. (2) The security or transaction is exempt under R.S. 51:708 or 709. (3) The securities are federal covered securities pursuant to R.S. 51:702.

Louisiana Revised Statute § 51:702(15)(a) defines a security as:

[A]ny note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; **investment contract**; voting-trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; any put, call, straddle, option . . . .[192]

Louisiana's "Blue Sky" laws were modeled after the federal system, specifically, the Securities Act of 1933 and the Securities Exchange Act of 1934.[193] Accordingly, Louisiana courts apply the *Howey* test to determine whether a particular business transaction falls within the definition of an "investment contract" by examination of the following factors: (1) an investment of money, (2) in a common enterprise, (3) with an expectation of a profit, and (4) reliance by the investor upon the efforts of others.[194]

As stated above, with respect to TMJ Plaintiffs' investments in both the Minneapolis Restaurant and the New Orleans Restaurant, TMJ Plaintiffs have pointed to evidence that creates a genuine dispute of material fact as to whether the investments constitute securities under *Howey*. Therefore, summary judgment is not appropriate with respect to TMJ Plaintiffs' Louisiana Blue Sky laws claims, to the extent there is a genuine issue of material fact as to whether the investments

---

[192] LA. STAT. ANN. § 51:702 (emphasis added).

[193] *Ek v. Nationwide Candy Div., Ltd.*, No. 8322 (La. Ct. App. 3 Cir. 7/22/81); 403 So. 2d 780, 785, *writ denied*, 407 So. 2d 732 (La. 1981).

[194] *Id*. at 785–86 (applying the *Howey* test to a Louisiana state securities claim).

in the Minneapolis Restaurant and the New Orleans Restaurant are securities as defined by state law. Accordingly, the Court will deny IMC Defendants' motion as to the securities fraud claim pursuant to Louisiana Blue Sky law.

## C.    *Claims for Intentional Misrepresentation or Fraudulent Inducement and Negligent Misrepresentation*

In the amended complaint, TMJ Plaintiffs bring claims for intentional misrepresentation or fraudulent inducement and negligent misrepresentation. IMC Defendants argue that they are entitled to summary judgment on these claims because forward-looking, oral predictions of the future are not actionable. TMJ Plaintiffs argue that summary judgment is inappropriate as to these claims because IMC Defendants misstate the law regarding future predictions forming the basis for a misrepresentation claim and because disputed issues of fact exist as to whether misrepresentations were made regarding the performance of the Minneapolis Restaurant and/or how well-executed the deal was.

Under Louisiana law, a plaintiff must demonstrate three elements to establish a claim for fraud: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract."[195] However, "fraud may be predicated on promises made with an intention not to perform the same, or, as the rule is frequently expressed, on promises made

---

[195] *Shelton v. Standard/700 Assocs.*, 2001-0587 (La. 10/16/01), 798 So. 2d 60, 64; *see also Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 2011-0072 (La. App. 1 Cir. 8/17/11), 76 So. 3d 502, 509.

without an intention of performance."[196]

The elements of intentional misrepresentation under Louisiana law are: (1) a misrepresentation of a material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury.[197] "[S]tatements, about things to happen in the future, cannot be misrepresentations of fact."[198]

Under Louisiana law, the required elements necessary to establish a claim of negligent misrepresentation are: (1) the defendant, in the course of its business or other matters in which it had pecuniary interest, supplied false information, (2) the defendant had a legal duty to supply correct information to the plaintiff, (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation, and (4) the plaintiff suffered damages or pecuniary loss as a result of the its justifiable reliance upon the omission or affirmative misrepresentation.[199]

IMC Defendants assert that in their depositions, TMJ Plaintiffs' members identify two categories of alleged representations of which they complain: (1) "[a]lleged oral representations by Mario Abal (who was leading development of the restaurants for IMC) leading up to the MOA

---

[196] *Polusky v. Allstate Petroleum, Inc.*, 180 So. 2d 815, 817 (La. App. 4 Cir. 1965).

[197] *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999) (citing *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir.1993); *Abell v. Potomac Ins.* Co., 858 F.2d 1104, 1131 n. 33 (5th Cir.1988); *Ballard's Inc. v. North American Land Development Corp.*, No. 28,437-CA (La. App. 2 Cir. 6/26/96); 677 So.2d 648, 651; *Pittman v. Piper*, 88-2162 (La. App. 4 Cir. 4/13/89); 542 So.2d 700, 702; *Deville v. Leonards*, 83-951 (La. App. 3 Cir.10/10/84); 457 So.2d 311, 313).

[198] *Bass v. Coupel*, 93-1270 (La. App. 1 Cir. 6/23/95), 671 So. 2d 344, 351; *see also Swann v. Magouirk*, No. 10,033 (La. App. Cir. 1 11/1/63); 157 So. 2d 749, 751; *see also Johnson v. Unopened Succession of Alfred Covington, Jr.*, No. 42,488 (La. App. 2 Cir. 10/31/07); 969 So. 2d 733, 742 ("Fraud cannot be predicated on unfulfilled promises or statements as to future events."); *see also Badalamenti v. Jefferson Guar. Bank*, 99-1371 (La. App. 5/30/00); 759 So. 2d 274, 280.

[199] *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Associations, Inc.*, 2006-0974 (La. App. 4 Cir. 6/20/07), 962 So. 2d 1089, 1092.

agreements (signed in August, 2015 and November, 2015), to the effect that "the restaurant would do great, that it would beat expectations, and similar optimistic sentiments"[200] and (2) "[a]lleged oral representations by David Crabtree (IMC's CEO) in connection with the grand opening of the MOA restaurant in September, 2016 as to the restaurant's prospects."[201] IMC Defendants argue that the alleged representations by Abal are not actionable as they are forward-looking statements, and the alleged representations made by Crabtree are not actionable because, in addition to being forward-looking, they were made after any agreement was executed and therefore could not have been relied upon by TMJ Plaintiffs.

TMJ Plaintiffs point to no evidence that any alleged statement made by Crabtree occurred before the execution of any of the agreements into which TMJ Plaintiffs allege IMC Defendants induced them to enter. Furthermore, TMJ Plaintiffs point to no evidence that they relied on the alleged statements made by Crabtree for any other purpose. Accordingly, no disputed issue of fact exists as to whether TMJ Plaintiffs relied on the alleged statements by Crabtree.

TMJ Plaintiffs point to evidence of numerous statements made by Abal regarding the quality of the deals, the profitability of the investments, and the potential financial performance of the restaurants.[202] TMJ Plaintiffs further point to an email sent from Renato Barbon, IMC Holdings' CFO, to Jose Agote, the former President of IMC Holdings, that "mistakes were made"

---

[200] Rec. Doc. 65-1 at 17 (citing Jolly Depo., at 73:8-18, 76:17-24, 79:8-22, 83:1-5, 104:9 to 105:14 (Ex. B); Trotter Depo., at 60:23 to 61:14, 69:15 to 70:4, 77:5-18, 79:1-10, 88:1-23, 90:1-7 (Ex. C); Motwani Depo., at 44:18-22, 59:10-20, 65:7-15, 77:6 to 78:6 (Ex. A)).

[201] *Id.* (citing Jolly Depo., at 73:8 to 74:4 (Ex. B); Trotter Depo., at 87:12 to 88:17, 90:1-12 (Ex. C); Motwani Depo., at 78:7-11 (Ex. A)).

[202] Rec. Doc 86 at 14–15 (citing Rec. Docs. 86-17).

with respect to budgeting for the Minneapolis Restaurant.[203] Moreover, to the extent Abal made representations to TMJ Plaintiffs about the present state of the deal and the accuracy or ability of IMC Defendants to project future outcomes, such would be statement of fact as to present events, rather than future events, and therefore such statements would be actionable under Louisiana law.

Accordingly, there are material facts in dispute regarding TMJ Plaintiffs' claims based on misrepresentations, such that summary judgment is not appropriate as to these claims. Thus, the Court will deny IMC Defendants' motion as to TMJ Plaintiffs' claims for fraudulent inducement, intentional misrepresentation, and negligent misrepresentation.

## D. *Claims for Breach of Contract*

IMC Defendants argue that they are entitled to summary judgment on TMJ Plaintiffs' misrepresentation and breach of contract claims because forward-looking, oral predictions of the future are not actionable. IMC Defendants contend that the parties' agreements include both merger/integration clauses and no-oral-modification clauses, which IMC Defendants assert preclude reliance on any representations or promises that were not incorporated into the parties' written agreements. TMJ Plaintiffs contend that integration clauses relate to parol evidence and do not automatically preclude a breach of contract claim based on the Parties' failure to perform the terms of the contract.

The Louisiana Civil Code defines an obligation as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another."[204] In order to recover for breach of contract under Louisiana law, the plaintiff must prove: "(1) the obligor's undertaking of

---

[203] *Id.*

[204] LA. CIV. CODE. ANN. art. 1756.

an obligation to perform; (2) the obligor failed to perform the obligation (i.e. breach); and (3) the breach resulted in damages to the obligee."[205]

Pursuant to Louisiana Civil Code article 2046, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Moreover, "[i]t is well settled that when the terms of a written contract are clear and unambiguous, the contract cannot be varied, explained or contradicted by parol evidence."[206] "In such cases, the meaning or intent of the parties to the contract must be sought within the four corners of the instrument."[207]

In this case, TMJ Plaintiffs do not dispute that all of the agreements for the Minneapolis Restaurant and the New Orleans Restaurant contain merger/integration clauses and no-oral-modification clauses. TMJ Plaintiffs do not argue that the contracts are unclear or ambiguous. Accordingly, the Court will not look beyond the four corners of those agreements to determine the contractual obligations of IMC Defendants for the purpose of deciding TMJ Plaintiffs' claim for breach of contract. However, TMJ Plaintiffs assert that IMC Defendants failed to perform the terms of the contract, and this is in dispute. Thus, the Court will deny IMC Defendants' motion as to TMJ Plaintiffs' claims for breach of contract.

### E.    Claim for Breach of Fiduciary Duty

IMC Defendants argue that they are entitled to summary judgment on TMJ Plaintiffs'

---

[205] *Favrot v. Favrot*, 2010–0986 (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1108–09; *SnoWizard, Inc. v. Robinson*, 897 F. Supp. 2d 472, 478 (E.D. La. 2012) (Brown, J.).

[206] *Breaux v. May*, 392 So. 2d 1089, 1091 (La. Ct. App. 1980), *writ denied*, 398 So. 2d 531 (La. 1981) (citing *Capizzo v. Traders & General Insurance Company*, 191 So.2d 183 (La.App. 3rd Cir. 1966); *Liberty Mutual Insurance Company v. Ads, Inc.*, 357 So.2d 1360 (La.App. 4th Cir. 1978)).

[207] *Id.*

breach of fiduciary duty claim because: (1) the members of IMC MOA, which is a manager-managed Florida LLC, do not owe fiduciary duties to each other, and therefore Defendant IMC Holdings, as a member but not a manager does not owe a fiduciary duty to TMJ Plaintiffs; and (2) TMJ Plaintiffs have failed to meet their burden of showing that Mario Abal, who allegedly made the misrepresentations to TMJ Plaintiffs that supposedly induced TMJ Plaintiffs to enter into the Operating Agreement, made those representations in his capacity as an agent or employee of IMC Management. TMJ Plaintiffs argue that IMC Defendants acknowledge that under Florida law, a manager of a manager-managed LLC owes fiduciary duties to its members; and the Management Agreement, which is included and incorporated by the Operating Agreement, establishes that IMC Holdings is the Managing Member.

Under Louisiana choice of law rules, "the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties."[208] As IMC MOA and IMC NOLA are Florida limited liability companies, the parties do not dispute that Florida law applies to the breach of fiduciary duty claim.

Under Florida law, "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."[209] Chapter 605 of the Florida Revised Limited Liability Company Act provides that "[e]ach manager of a manager-managed limited liability company and member of a member-

---

[208] *Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 385 n.7 (5th Cir. 2009) (internal citations).

[209] *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).

managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company."[210] Furthermore, "[a] manager of a manager-managed limited liability company and a member of a member-managed limited liability company shall discharge their duties and obligations under this chapter or under the operating agreement and exercise any rights consistently with the obligation of good faith and fair dealing."[211]

The parties do not dispute that IMC MOA is a manager-managed Florida LLC. Under Florida law, each manager of a manager-managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company.[212] Under the Revised MOA Business Management Agreement, IMC Management is the manager of IMC MOA.[213] Therefore, IMC Management owes a fiduciary duty to IMC MOA and its respective members, in its role as Manager.

IMC Defendants contend that Defendant IMC Holdings does not owe a fiduciary duty to TMJ Plaintiffs because it is a member but not a manager of IMC MOA. TMJ Plaintiffs argue that the Management Agreement, which is included and incorporated by the Operating Agreement, establishes that "IMC Holdings is the Managing Member." TMJ Plaintiffs point to Section 4.1.1 of the Revised MOA Business Operating Agreement, which provides that IMC Holdings shall be

---

[210] Fla. Stat. Ann. § 605.04091 (West).

[211] *Id.*

[212] *Id.*

[213] Rec. Doc. 46-5 at 31.

the "initial manager" of IMC MOA.[214] Therefore, it appears that IMC Holdings owed a fiduciary duty to IMC MOA as the "initial manager" of IMC MOA. Moreover, to the extent a disputed issue of fact exists as to whether Mario Abal was acting as an agent of IMC Management when the alleged misrepresentations were made constituting an alleged breach of IMC Management's fiduciary duties to IMC MOA and their respective members, summary judgment is not appropriate. Accordingly, the Court will deny IMC Defendants' motion as to this claim.

## F.    *Louisiana Unfair Trade Practices Act Claim*

IMC Defendants argue, *inter alia*, that the LUTPA claim must be dismissed because it was not timely filed. In response, TMJ Plaintiffs assert that the LUTPA claims are not preempted because TMJ Plaintiffs only later discovered the underlying unfair trade practices and could not file suit until then.

The Louisiana Unfair Trade Practices Act is codified at Louisiana Revised Statute § 51:1409, which provides, in pertinent part: "Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by Section 51:1405, may bring an action individually but not in a representative capacity to recover actual damages." Section 51:1409(E) provides that "[t]he action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."[215]

In *Zeigler v. Housing Authority of New Orleans*, the Louisiana Fourth Circuit Court of

---

[214] Rec. Doc. 46-5 at 10.

[215] La. R. S. 51:1409(E)

Appeal stated that an act gives rise to a right of action under Section 1409 when the plaintiff "suffer[s] any ascertainable loss of money or moveable property."[216] The court in *Zeigler* further stated, "The date of the alleged wrongful act begins the running of the prescription, even if the plaintiff was unaware of the act."[217] The Louisiana Second Circuit Court of Appeal has also recognized that Section 51:1409(E) "has been interpreted as creating a peremptive, rather than a prescriptive period," and therefore "cannot be interrupted or suspended."[218]

IMC Defendants argue that more than one year has passed between the date of the alleged wrongful act and the date TMJ Plaintiffs filed this action, and therefore, the LUTPA claims are time-barred. TMJ Plaintiffs argue that TMJ Plaintiffs "only later" discovered the underlying unfair trade practices and could not file suit until then. However, TMJ Plaintiffs cite no authority for the assertion that the limitations period for a LUTPA claim is subject to a discovery rule. Moreover, under Louisiana law, the date of the alleged wrongful act begins the running of the prescription, even if TMJ Plaintiffs were unaware of the act.[219]

In the Amended Complaint, TMJ Plaintiffs assert that IMC Defendants' actions in providing false and misleading information to TMJ Plaintiffs constitute unfair and/or deceptive acts giving rise to their LUTPA claim.[220] However, TMJ Plaintiffs do not point to any alleged action whereby IMC Defendants provided false and misleading information within one year of

---

[216] *Zeigler v. Hous. Auth. of New Orleans*, 2012-1168 (La. App. 4 Cir. 4/24/13); 118 So. 3d 442, 452.

[217] *Id.* (citing *Morris v. Sears, Roebuck and Co.*, 99–2772 (La. App. 4 Cir. 5/31/00); 765 So.2d 419, 422).

[218] *Adcock v. Wooten*, 50,116 (La. App. 2 Cir. 9/30/15), 180 So. 3d 473, 477 (citing *Glod v. Baker*, 04–1483 (La. App. 3d Cir. 3/23/05), 899 So.2d 642, *writ denied*, 05–1574 (La.1/13/06), 920 So.2d 238).

[219] *Zeigler*, 118 So. 3d at 452.

[220] Rec. Doc. 46 at 56.

May 3, 2017, the date this action was filed.[221] Accordingly, because there is no disputed issue of material fact, the Court finds that IMC Defendants' are entitled to judgment as a matter of law that the LUTPA claim is perempted.

### G.    *Claim for Anticipatory Breach of Contract*

IMC Defendants argue that TMJ Plaintiffs are not entitled to declaratory judgment for anticipatory breach because there is no genuine fact in dispute that (1) it was TMJ Plaintiffs (not IMC Defendants) that were responsible for delivering a built-out premises for such a restaurant, and (2) it was TMJ Plaintiffs that decided to stop development of the New Orleans Restaurant. TMJ Plaintiffs argue that summary judgment on this claim should be denied because if and when either party manifested an unwillingness to perform their obligations, and whether such a party was justified based on the factual circumstances are all material facts which the Parties genuinely dispute.

In *Latter & Blum, Inc. v. Ditta*, the Louisiana Fourth Circuit Court of Appeal stated, "Louisiana courts have recognized the doctrine of anticipatory breach of contract."[222] The court further recognized that "[t]he doctrine of anticipatory breach of contract applies when an obligor announces he will not perform an obligation which is due sometime in the future."[223] "Under those circumstances, the obligee need not wait until the obligor fails to perform for the contract to be

---

[221] Rec. Doc. 1.

[222] *Latter & Blum, Inc. v. Ditta*, 2017-0116 (La. App. 4 Cir. 6/22/17), 223 So. 3d 54, 60, n.4 writ denied, 2017-1293 (La. 11/6/17), 229 So. 3d 475 (citing *Andrew Development Corp. v. West Esplanade Corp*., 347 So.2d 210, 212–13 (La. 1977); *Ringel & Meyer, Inc. v. Falstaff Brewing Corp*., 511 F.2d 659, 660 (5th Cir. 1975)).

[223] *Id*. (citing *Fertel v. Brooks*, 02-0846, p. 13 (La. App. 4 Cir. 9/25/02), 832 So.2d 297, 305).

considered in breach."[224]

IMC Defendants contend that there is no material fact in dispute that TMJ Plaintiffs, not IMC Defendants, breached their obligations under the New Orleans Restaurant agreements by failing to deliver a built-out premises for the restaurant, and stopping development of the restaurant. In response, TMJ Plaintiffs argue that if and when either party manifested an unwillingness to perform their obligations, and whether such a party was justified based on the factual circumstances are all material facts in dispute. As support, TMJ Plaintiffs cite only the deposition of David Crabtree, IMC's CEO, who, when asked whether he had personally taken any action to further develop the New Orleans Restaurant, stated that it was "not in [his] control."[225]

To the extent that judgment on this claim requires a determination of fact as to whether IMC Defendants owed TMJ Plaintiffs an obligation and announced that they would not perform the obligation, TMJ Plaintiffs have put forth some evidence that IMC Defendants' indicated that they would not perform the obligation. Accordingly, because genuine issues of material fact are in dispute, the Court will deny IMC Defendants' motion for summary judgment as to this claim.

## V. Conclusion

For the reasons stated above, the Court grants IMC Defendants' motion to the extent it seeks summary judgment on TMJ Plaintiffs' claims for rescission under the Securities Act of 1933 and TMJ Plaintiffs' LUTPA claim, as the Court finds no genuine dispute of material fact to preclude summary judgment as to these claims. However, because material facts are in dispute summary judgment is not appropriate as to all other claims.

---

[224] *Id.* (internal citation and quotation marks omitted).

[225] Rec. Doc. 130-4 at 11.

Accordingly,

**IT IS HEREBY ORDERED** that IMC Defendants' motion for summary judgment is **GRANTED** to the extent it seeks summary judgment on TMJ Plaintiffs' claims for rescission pursuant to the Securities Act of 1933 and TMJ Plaintiffs' LUTPA Claim. IMC Defendants' motion for summary judgment is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this 18th day of April, 2018.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**